# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:20-CV-00048-KDB

| | |
|---|---|
| SARAH O'DELL,<br><br>    **Plaintiff,**<br><br>  v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>    **Defendant.** | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Sarah O'Dell's Motion for Summary Judgment (Doc. No. 15) and Defendant's Motion for Summary Judgment (Doc. No. 17), as well as the parties' briefs and exhibits. Ms. O'Dell, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Title XVI supplemental security income.

Having carefully reviewed and considered the written arguments, administrative record, and applicable authority, the Court finds that the Commissioner's decision to deny Plaintiff social security benefits is supported by substantial evidence. Accordingly, the Court will **DENY** Plaintiff's Motion for Summary Judgment; **GRANT** Defendant's Motion for Summary Judgment; and **AFFIRM** the Commissioner's decision.

1

## I. BACKGROUND

Ms. O'Dell filed an application for supplemental security income on November 16, 2016, alleging an onset date of November 10, 1992. (Tr. 10, 91).[1] Her claim was denied initially in April 2017, and upon reconsideration on August 11, 2017. (Tr. 10, 86-127). Ms. O'Dell filed a timely written request for a hearing on August 30, 2017. (Tr. 10, 137). On March 20, 2019, Ms. O'Dell appeared and testified at a hearing before Administrative Law Judge Clinton C. Hicks (the "ALJ"). (Tr. 10). In addition, Kim Williford, a vocational expert ("VE"), and Kathleen Moscato, Ms. O'Dell's attorney, appeared at the hearing. *Id.*

Judge Hicks returned an unfavorable decision on June 3, 2019, denying Ms. O'Dell's claim. (Tr. 10-22). Ms. O'Dell requested review of the ALJ's decision with the Appeals Council ("AC"), which denied review on March 25, 2020. (Tr. 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. O'Dell has requested judicial review in this Court pursuant to 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration to determine if Ms. O'Dell was disabled during the relevant period.[2] "Disability" means "the inability to do any substantial gainful activity by reason of any medically

---

[1] Citations to the administrative record filed by the Commissioner are designated as "Tr."

[2] The ALJ must determine the following under the five-step sequential evaluation: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite the claimant's limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

2

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

At step one, the ALJ found that Ms. O'Dell had not engaged in substantial gainful activity since November 16, 2016, the date of her application. (Tr. 12, Finding 1). At step two, the ALJ found that Ms. O'Dell had the following severe impairments: "obesity, degenerative disc disease, right knee injury, bipolar disorder, asthma, depressive disorder, and neurodevelopment disorder." (Tr. 12, Finding 2). The ALJ went on to consider Ms. O'Dell's impairments and the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926), and concluded at step three that Ms. O'Dell's impairments did not meet or medically equal any listing. (Tr. 13, Finding 3).

At step four, the ALJ found that Ms. O'Dell had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with the following limitations:

> the claimant is limited to no climbing of ropes, ladders, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; avoidance of concentrated exposure to fumes, dust, gases, etc.; avoidance of concentrated exposure to hazards; performance of simple, routine, repetitive task or unskilled work; non-production pace work; no complex decision-making, no crisis situations, and no constant changes in routine; occasional interaction with others; and can stay on task two hours at a time.

(Tr. 15, Finding 4). Ms. O'Dell had no past relevant work (*see* 20 C.F.R. § 416.965), so the ALJ proceeded to step five where he determined that, considering Ms. O'Dell's age, education, work experience, and RFC, she could perform other jobs that exist in significant numbers in the national economy. (Tr. 20, Finding 9). Adopting the VE's testimony, the ALJ found that Ms. O'Dell could perform the requirements of representative occupations such as marker (DOT # 209.587-034),

office helper (DOT # 239.567-010), and routing clerk (DOT # 222.587-038). Therefore, the ALJ concluded that Ms. O'Dell was not disabled under the Social Security Act.

### III. LEGAL STANDARD

District courts review the ALJ's Social Security disability determination pursuant to the standard set out in 42 U.S.C. § 405(g). The decision of the ALJ must be upheld if the ALJ "applied the correct legal standards" and if the "factual findings are supported by substantial evidence." *Bird v. Comm'r of SSA*, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Though the "threshold for such evidentiary sufficiency is not high," it requires that "more than a mere scintilla" of evidence support the ALJ's findings. *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). In undertaking this review, it is not the district court's place to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). However, "we do not reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

### IV. DISCUSSION

On appeal to this Court, Ms. O'Dell makes the following assignments of error: (1) the ALJ erred by failing to establish an evidence-based foundation for his conclusion that Ms. O'Dell can stay on task two hours at a time; and (2) the ALJ erred by failing to be "sufficiently specific" in his non-exertional limitation of "non production pace" in the RFC. (Doc. No. 16, at 11).

### A. Ability to stay on task

The ALJ limited Ms. O'Dell's RFC to "simple, routine, repetitive task[s] or unskilled work; non-production pace work; no complex decision making, no crisis situations, and no constant changes in routine; occasional interaction with others; and *can stay on task two hours at a time*." (Tr. 15). As for Ms. O'Dell's first assignment of error, she argues that the ALJ did not explain how he concluded, based on the medical evidence, that Ms. O'Dell could stay on task for two hours at a time for a full workday. (Doc. No. 16, at 12). She cites to *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), in support of her argument.

A claimant bears the burden of establishing her RFC by showing how her impairments affect her functioning. *See, e.g.*, *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In doing so, the ALJ is required to consider all of the claimant's "physical and mental impairments, severe and otherwise, and determine on a function-by-function basis, how they affect [one's] ability to work." *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016). The ALJ must provide a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Social Security Regulation ("SSR") 96-8P. Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019).

In *Mascio*, the Fourth Circuit held that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." 780 F.3d at 636; *see also Thomas*, 916 F.3d at 312 (reversing when "the ALJ's analysis of [claimant's] RFC contain[ed] too little logical explanation for [the court] to conduct meaningful appellate review").

Specifically, the *Mascio* court held that an ALJ must address a claimant's ability to stay on task if the ALJ found that the claimant has a moderate limitation in concentration, persistence, and pace ("CPP"). *Id.* at 638. An ALJ cannot summarily "account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work, because the ability to perform simple tasks differs from the ability to stay on task." *Shinaberry*, 952 F.3d at 121 (internal quotations omitted). *Mascio* does not, however, create a categorical rule requiring automatic remand when an ALJ finds a moderate limitation in CPP but fails to provide a specific limitation in the RFC. *Shinaberry*, 952 F.3d at 121 ("But we did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC."). "[A]n 'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." *Id.* Thus, if the ALJ does not include a corresponding limitation in the RFC, the ALJ must explain why further limitations in the RFC are not warranted to satisfy its duty under *Mascio*.

Importantly, *Mascio* dealt with an *unexplained* inconsistency between the ALJ's findings at step three of the sequential evaluation process and, on the other hand, the ALJ's RFC assessment and corresponding hypothetical question to the VE. The ALJ erred in *Mascio* by "ignoring (without explanation) [the claimant's] moderate limitation in her ability to maintain her concentration, persistence, and pace." *Id.* at 633. In this regard, the ALJ's opinion was "'sorely lacking' in a manner that 'frustrates meaningful review.'" *Hubbard v. Berryhill*, No. 3:17-CV-677, 2018 WL 3744017, at *6 (W.D.N.C. Aug. 7, 2018) (quoting *Ponder v. Berryhill*, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017)).

The ALJ did determine that Ms. O'Dell had moderate limitations in CPP. Nevertheless, the ALJ proceeded to find that her impairments "are not disabling and would not prevent her from meeting the basic demands of regular work on a sustained basis." (Tr. 20). The medical evidence supports the ALJ's conclusion. The record reflects that any sustained concentration and persistence limitations do not preclude Ms. O'Dell from performing simple, routine, and repetitive tasks in a non-production work setting for an entire workday.[3]

State agency psychological consultant Dr. Jennifer Fulmer evaluated Ms. O'Dell's medical records and rendered an opinion that the ALJ gave great weight. (Tr. 14, 18, 99). Dr. Fulmer opined that Ms. O'Dell has sustained concentration and persistence limitations, was moderately limited in her ability to maintain attention and concentration for extended periods, and moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 104-105). Yet, Dr. Fulmer concluded that, "[o]verall, the objective and functional evidence supports the mental capacity for [simple, routine, and repetitive tasks] in a low production work setting." (Tr. 99).

Psychological consultant Dr. Andrea Sinclair opined that:

> Based on her current presentation, intellectually and cognitively, it appears that Ms. O'Dell could satisfactorily complete some work-related tasks. She may have difficulty understanding directions, but is likely able to follow and retain this information. The claimant would likely need repetition in terms of directions, as well as being shown how to do something via hands-on. Based on the claimant's intellect, she is likely to do best in a job that is simple and repetitive in nature, as well as one that is not time or production based. The claimant appears to be capable of some sort of employment; however, she has a significant amount of anxiety about "messing up."

---

[3] The ALJ's assessment that Ms. O'Dell can stay on task for two-hour intervals establishes that she can work for an entire eight-hour workday. Social Security Regulations state that a normal workday includes a morning break, a lunch period, and an afternoon break, at approximately two-hour intervals. S.S.R. 96-6P, 1996 WL 374185, at *6 (July 2, 1996); *See Wilson v. Saul*, No. 1:19CV1089, 2020 WL 6293132, at *4 (M.D.N.C. Oct. 27, 2020).

(Tr. 399). Similar to Dr. Fulmer's opinion, Dr. Sinclair indicates that Ms. O'Dell could perform work tasks that are simple and repetitive in nature in a job environment that is not time or production based. The ALJ gave Dr. Sinclair's opinion partial weight. (Tr. 18).

Another psychological consultative examiner, Dr. Laura Tugman, opined that Ms. O'Dell's ability to comprehend and implement multi-step, complex instructions and her ability to maintain persistence and pace for a full workday or workweek is only *mildly* impaired due to mood instability. (Tr. 386) (emphasis added). She further opined that Ms. O'Dell "appears to be capable of understanding simple and detailed information and directions and putting them to use in a vocational setting." *Id.*

"[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting . . . [claimant to] only unskilled work sufficiently accounts for such limitations." *Shinaberry*, 952 F.3d at 121 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (internal quotations omitted)). The absence of a specific conclusion that Ms. O'Dell is able to work specifically in two-hour intervals does not mean that the ALJ must interpret that silence in claimant's favor. The ALJ is free to consider that silence in context and draw a reasonable inference from it. *See, e.g.*, *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say."). Here, the ALJ considered the medical evidence and found that the medical records describing Ms. O'Dell's limitations "demonstrate that such limitations will not interfere with her ability to function independently, appropriately, effectively and on a sustained basis in accordance with the residual functional capacity described [in the ALJ's decision]." (Tr. 20).

## B. "Non-production" pace

For Ms. O'Dell's second assignment of error, she asserts that the ALJ erred by failing to define the term "non-production pace work." She relies on the Fourth Circuit's decision in *Thomas v. Berryhill*, where the circuit court vacated and remanded the district court's decision affirming an ALJ's RFC formulation that included a limitation that the claimant could not perform work "requiring a production rate or demand pace." 916 F.3d at 312.

In *Thomas*, the Fourth Circuit vacated and remanded based on a combination of missteps that frustrated the court's review. *Id.* First, the ALJ drew no explicit conclusions about how the claimant's mental limitations affected her ability to perform job-related tasks for a full workday. *Id.* Second, the ALJ did not sufficiently explain how she weighed the significant evidence related to the claimant's mental-health treatment. *Id.* Third, the ALJ expressed the claimant's RFC first and only then concluded that the limitations caused by claimant's impairments were consistent with her RFC. *Id.* Fourth, and important to Ms. O'Dell's argument, the ALJ stated that the claimant could not perform work "requiring a production rate or demand pace," but she failed to give enough information for a reviewing court to understand what those terms meant. *Id.* In conclusion, the Fourth Circuit held: "*Combined*, the above-listed missteps in the ALJ's RFC evaluation frustrate our ability to conduct meaningful appellate review, requiring us to vacate and remand." *Id.* (emphasis added).

In *Perry v. Berryhill*, 765 F. App'x 869 (4th Cir. 2019), the Fourth Circuit similarly found the ALJ's lack of analysis made it "difficult if not impossible, to evaluate whether restricting [the claimant] to a 'non-production oriented work setting' properly accounted for [the claimant's] well-

documented limitations in concentration, persistence, and pace." 765 F. App'x at 872.[4] The Fourth Circuit distinguished *Thomas* and *Perry* from another Fourth Circuit case, *Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017), in which the court affirmed an ALJ's RFC limitation to "non-production jobs," because the ALJ in *Sizemore* "provided additional context explaining that the claimant could perform work only in a 'low stress' setting, without any 'fast-paced work' or 'public contact,' to account for moderate limitations in concentration, persistence and pace." *Id.* n.1. "These descriptors," the court continued, "helped to explain the restriction intended by the ALJ, and allowed us to evaluate whether that restriction adequately accounted for the claimant's limitations." *Id.* Indeed, this Court has found similar limitations to "non-production pace work" to be sufficient. *See, e.g.*, *Martinez v. Berryhill*, No. 3:17-CV-186, 2018 WL 709971, at *4 (W.D.N.C. Feb. 5, 2018), *aff'd sub nom. Martinez v. Saul*, No. 18-1376, 2019 WL 4130955 (4th Cir. Aug. 20, 2019) (unpublished) (reviewing and affirming RFC that precluded the type of "production-rate pace" required in assembly line work); *Michaels v. Colvin*, No. 3:15-CV-388-RJC-DSC, 2016 WL 8710975 (W.D.N.C. Mar. 25, 2016), *aff'd sub nom. Michaels v. Berryhill*, 697 F. App'x 223 (4th Cir. 2017) (reviewing and affirming RFC that limited claimant to "work at nonproduction pace"). These cases show that the inclusion of a "non-production work" limitation in the RFC is not categorically reversable, but must be evaluated on a case-by-case basis to see if there is adequate explanation and substantial evidence to support the restriction.

This case differs from *Thomas*, where there was a combination of missteps that frustrated the court's review, and is more like the *Sizemore*, *Martinez*, and *Michaels*, in which the ALJ's RFC

---

[4] In *Perry*, the court noted that it was undisputed that the claimant's stroke left him with limitations in his CPP. In contrast, Ms. O'Dell's limitations in CPP are not as well documented as she would have the Court believe. While medical providers noted certain limitations in her CPP, they opined that she could still perform simple, routine, and repetitive tasks in a low production or non-production work environment.

assessment was supported by substantial evidence. As discussed above, medical providers opined that Ms. O'Dell would be able to work "in a job that is . . . not time or production based," (Tr. 399), and could complete "simple, routine, repetitive tasks in a low production based work setting," (Tr. 18, 99), despite her limitations in concentration, persistence, and pace. The ALJ further limited Ms. O'Dell to jobs with "no complex decision-making; no crisis situations, and no constant changes in routine; [and] occasional interaction with others." (Tr. 15). The ALJ's use of these explanations and the descriptors in the hypotheticals illustrating an appropriate work environment, combined with the medical opinions, lend sufficient context to discern what the ALJ intended by "non-production work." Furthermore, the VE expressed no confusion about the hypotheticals presented during the hearing or in the interrogatory, both of which included "non-production work" as a limitation, and Ms. O'Dell's attorney never ask for further explanation on the term. *See Williams v. Comm'r of Social Sec.*, No. 3:14-CV-24, 2015 WL 2354563, at *6 (N.D.W. Va. May 15, 2015) ("The fact that the VE, who is 'highly trained and experienced,' did not express any confusion regarding [these limitations] reinforces that the VE understood what [these terms] meant."). When the ALJ's RFC limitation of non-production work is supported by the medical opinions, such as Dr. Fulmer's and Dr. Sinclair's opinion, and further explained by other limitations in the RFC, the ALJ has created a sufficient logical bridge between the evidence and RFC limitations and has supported the RFC determination with substantial evidence.

## V. ORDER

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment, (Doc. No. 15), is **DENIED**; Defendant's Motion for Summary Judgment, (Doc. No. 17), is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED**.

Signed: April 1, 2021

Kenneth D. Bell
United States District Judge